## Case No. 17,717.

WILLIAMS v. BOX OF BULLION.

[1 Spr. 57;[1] 1 West. Law J. 355; 6 Law Rep. 363.]

District Court, D. Massachusetts. Oct., 1843.

SALVAGE SERVICES — TRANSFER OF RIGHT — QUANTUM MERUIT — DEVIATION.

1. The American ship Constitution, on a voyage from Havre to Charleston, S. C., having on board a box of bullion, was abandoned at sea.

The box was taken on board the Danish brig Urania, bound to Copenhagen; and three days afterwards, while at sea, was transferred to the Constellation, an American ship, bound to the United States. *Held*, that the bullion, while on board the Urania, was not in that peril required by law to make it the subject of salvage, and the taking it on board the Constellation was not a continuation of salvage service.

2. There being no agreement to transfer any right of the Urania to the Constellation, and the captain of the former having declared himself fully compensated, no such transfer is created by implication of law.

3. The Constellation was entitled to a quantum meruit compensation, and might proceed therefor in rem. This right was not lost by delivery of the box of bullion to the master of the Constitution.
[Cited in note to Salvor Wrecking Co. v. Sectional Dock Co., Case No. 12,273.]

4. It is not a deviation for a vessel to go out of her course three miles, to speak another at sea, on seeing a signal for that purpose; nor to delay three hours, to take from a foreign ship, bound to a foreign port, shipwrecked mariners of the United States, for the purpose of bringing them direct to the United States.

The American ship Constitution, on a voyage from Havre to Charleston, S. C., having on board a box of gold coin, of the value of $42,000, and a crew of seventeen men, met with a disaster, and was deserted at sea on the 9th of April, 1843. The crew and box of gold were taken on board the Danish brig Urania, bound to Copenhagen. On the 12th of April, she fell in with the American whaleship Constellation, bound for New London. The Urania made a signal, and the Constellation bore away, and on speaking her, was requested to take the crew of the Constitution on board, which she did, and also took the box of bullion. The owners and crew of the Constellation brought this libel, claiming, first, salvage, and if not entitled to that, compensation.

C. G. & F. C. Loring, for libellant.
B. R. Curtis, for claimants.

SPRAGUE, District Judge. The box of bullion, while on board the Urania, was not in that peril required by law to make it the subject of salvage service. Abb. Ship. 554; 3 Kent, Comm. 245; Waite v. Antelope [Case No. 17,045]. The mere taking it on board the Constellation was not, therefore, a continuation of salvage service.

There was no agreement for the transfer of any right of the Urania to the Constellation. But it is contended, that such transfer is created by implication of law, it being reasonable and equitable, and such as the parties would have made, had they been conusant of their rights. It appears that the master of the Urania received property which he deemed a full compensation, and by which he declared himself amply paid. I think it would be too hazardous to presume him ignorant of his rights, and to transfer from him to the Constellation claims which he had relinquished. The libellants must, therefore, stand upon their own merits and services, and these

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

do not confer upon them the character of salvors.

That they are entitled to a quantum meruit compensation is not denied, but it is insisted that they cannot proceed in rem; that their lien was lost by delivery of the bullion to the master of the Constitution. The question is still between the original parties; no rights of third persons have intervened. The service was strictly maritime, and the right to compensation peculiarly within the jurisdiction of the admiralty. The appropriate remedy would be a process in rem, to which the party would clearly have been entitled, had possession been retained. Does the parting with possession take away this privilege? I have heard no argument, either from principle or authority, why it should. In cases of salvage to which this is analogous, possession need not be retained.[2] Eleanora Charlotta, 1 Hagg. Adm. 156.

[A contract to deliver possession, as in case of a cargo to be delivered before the freight is payable, may take away the right to proceed in rem, but it is on the ground that such was the intention of the parties. An engagement upon adequate consideration, that the party shall have the possession, may well be understood to mean that he shall have beneficial possession, giving him the entire control and disposition of the property. The circumstances of this case do not show any such agreement.][3]

It is consonant to natural justice, that the property should pay for the service rendered to it, and I see no sufficient grounds for saying that the equitable privilege of proceeding in rem has been lost.

The only question is the amount of compensation to be awarded. One ground urged for enhancing the compensation is, that there was a deviation, which discharged the underwriters. The Urania made a signal to speak, or of distress, and for that cause the Constellation, when at a distance of two or three miles, bore away, and upon approaching the Urania, was informed of the condition of the crew of the Constellation, and requested to take them on board. This request was acceded to, and a delay of some two or three hours was occasioned thereby. Nothing was said of the box of bullion; but while the crew were preparing, and passing in boats from the Urania to the Constellation, this box, under the direction of the captain of the Constitution, was put into one of the boats, and under the care of the mate of the Constitution, was conveyed to the Constellation and there hoisted on board; and afterwards was, by the captain of the Constellation, placed in his state-room as a place of safety.

The bearing away, upon seeing the signal of the Urania, and before its object was known, clearly was not a deviation. See Crocker v. Jackson [Case No. 3,398]. It was no more than a common incident of a voyage, which at its inception all parties must be presumed to contemplate as likely to occur. But it is insisted, that as the crew of the Constitution were not in immediate danger or distress, the delay for the purpose of taking them on board, was a deviation. Their ship, an American vessel, had foundered at sea on a voyage to the United States. They had been rescued by the Urania, a Danish brig, bound to Copenhagen. They fell in with the Constellation, an American ship, coming to the United States, where she arrived in thirteen or fourteen days.

That it is the invariable practice to take men on board under such circumstances, is abundantly proved. Indeed, to have refused to receive their shipwrecked countrymen, and compelled them still to rely on the hospitality of strangers, and be transported to a foreign and distant country, would have been a violation not merely of the courtesy, but of the humanity of the seas. As a general rule, that is not to be deemed a deviation, which is within the usage of the seas, on such a voyage. Delays to save wrecked property are an exception to this rule. Salvage in such case is given only to the owners and those engaged in the service. No part is awarded to the underwriters: and it is reasonable that the insured should not be permitted to become wreckers for their own pecuniary benefit, and at the risk of the insurers.

Urgent cases may be supposed, but in general the question, whether the insured should add to the hazards of the voyage merely for the purpose of saving the property of others, is one of pecuniary interest and not of moral obligation, and the policy of the law addressing this interest, holds out strong inducement to engage in such enterprises, by the very liberal compensation which it awards. The law ought to be equally solicitous to encourage services like the present. But in such case not only is no salvage allowed, but, according to the usage proved, no compensation is asked. The owners of the vessel bear the expense of the delay and of the support of the shipwrecked mariners taken on board, and the captain and crew the inconvenience of such large addition to their numbers in their narrow accommodations; and why, to this should be added the risk of the whole property during the rest of the voyage? The policy of the law certainly would not create this additional discouragement to conduct which it approves and desires. Justice does not require that the performance of a mere usual act of humanity, burdensome at all events to the owners, should be visited by the penalty of transferring the risk of the vessel thereafter from the underwriters to the insured. I am of opinion, that stopping to take on board the crew of the Constitution was not a deviation.

With respect to the box of bullion, nothing

---

[2] That a delivery, by the salvor to the owner, of the property saved, does not defeat the lien, or the right to process in rem, see The H. D. Bacon [Case No. 4,232]. See, also, Cutler v. Rea, 7 How. [48 U. S.] 731.

[3] [From 6 Law Rep. 303.]

was said to the captain of the Constellation, until it was actually on board his vessel. It does not appear that he had any previous knowledge of its existence. There was not, therefore, any intentional delay on his part, for the purpose of receiving it. It was transferred from the Urania, as incidental merely to the removal of the captain and crew of the Constitution, and while the Constellation was waiting a reasonable time for that purpose only. This did not create a forfeiture of her insurance.

The time, labor, and responsibility of the Constellation did not certainly exceed what they would have been, if the bullion had been taken on freight. But there are considerations which should enhance the compensation beyond the mere ordinary freight: The ship, with her cargo, was of great value. The box of gold was taken on board at sea, when the weather was thick and rainy, and boats, passing and repassing between the vessels, might be in some danger. She was not a freighting ship; and when, in addition to her own crew of whalemen, seventeen other seamen were taken on board the Constellation, her captain, had it been left to his option, might have been reluctant to take on board a box of gold of such great value, and presenting temptations to seamen, of whose character he was ignorant. But he had no choice, and could not make terms.

I think that one and a quarter per cent., or $525, is a suitable compensation; and decree that, with costs.